*Parizo v. Nuovo et al.*, No. 62-1-15 Cncv (Mello, J., Sept. 27, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Chittenden Unit | CIVIL DIVISION<br>Docket No. 62-1-15 Cncv |

| | |
|---|---|
| LIZA PARIZO, ADMINISTRATRIX OF THE<br>ESTATE OF ROBERT L. PARIZO, JR.,<br>     Plaintiff,<br><br>v.<br><br>THOMAS C. NUOVO AND BAUER GRAVEL<br>FARNHAM,<br>     Defendants. | |

### DECISION AND ORDER
### RE: PLAINTIFF'S SUPPLEMENTAL MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO ALLOW AT TRIAL REFERENCE TO VARIOUS VERMONT RULES OF PROFESSIONAL CONDUCT

This is an action for legal malpractice, fraudulent inducement, fraudulent concealment, breach of fiduciary duty, and consumer fraud. Pending before the Court is Plaintiff's Motion in Limine to Allow at Trial Reference to Various Vermont Rules of Professional Conduct. W. Owen Jenkins, Esq. represents Plaintiff Liza Parizo. David D. Aman, Esq. and William L. Gagnon, Esq. represent Defendants Thomas C. Nuovo and Bauer Gravel Farnham.

### Background

Plaintiff's complaint alleges the following facts, which are recounted here merely for background information and do not constitute findings. Decedent Robert L. Parizo was injured in an accident on December 27, 2010 while being transported in a Morf Transportation (Morf) van operated by Darrell Robar. At the time of the accident, he was in a wheelchair and was allegedly restrained by a lap seatbelt. A vehicle operated by Dustyn M. Larose struck the rear end of a snowplow. The Morf van then struck the rear end of Larose's vehicle. Decedent sustained multiple injuries as a result of the accident.

Defendants Thomas C. Nuovo, Esq. and Bauer Gravel Farnham agreed to represent Decedent in asserting personal injury claims related to the accident. They asserted claims on Decedent's behalf against Morf and Larose, but they never asserted claims against Ford, Valley Ford, Mobility Works, Yankee Medical, Permobil, or Q'Straint. The claims against Morf and Larose went to mediation, which resulted in a $1,000,000 settlement.

Decedent filed his original complaint against Defendants on January 16, 2015. After his death, Plaintiff Liza Parizo, the administrator of Decedent's estate, filed an amended complaint,

which replaced the original complaint pursuant to the Court's order on August 21, 2016. The amended complaint lists the following claims:

1. Legal malpractice. In this count, Plaintiff alleges that Defendant Nuovo fell below the standard of professional care by:
   a. claiming an unreasonable and excessive fee;
   b. claiming a cost reimbursement for accident reconstruction Acrecona;
   c. failing to investigate Decedent's injuries, including failing to depose Robar;
   d. failing to employ an expert on failure of restraint systems;
   e. failing to employ an expert on airbag failure;
   f. failing to provide the accident reconstructionist with all relevant information and documentation on the accident;
   g. failing to make a claim against Valley Ford;
   h. failing to make a claim against Ford for the airbag failure;
   i. failing to make a claim against Ford for not instructing Valley Ford and/or MobilityWorks on the proper installation of restraints; and
   j. failing to advise Decedent that the statute of limitations on the product liability claim (Ford) would expire in December 2013 and that Decedent would need to hire another attorney to file that claim.
2. Fraudulent inducement: In this count, Plaintiff alleges that Defendant Nuovo induced Decedent to represent him by claiming that he would pursue claims against Ford.
3. Fraudulent concealment: In this count, Plaintiff alleges that Defendant Nuovo failed to provide Decedent with accountings of remittances to Decedent. Plaintiff alleges this was a willful omission with the intent to deceive Decedent.
4. Breach of Fiduciary Duty: Plaintiff alleges that Defendant Nuovo "wantonly and willfully disregarded" Decedent's interest in favor of Defendants' interests.
5. Consumer Fraud: Plaintiff alleges that Defendant Nuovo falsely represented that Decedent would receive no less than $1,000,000 and that he would pursue the claim against Ford.

Discussion

On April 20, 2017, the Court issued a decision in which it deferred ruling on the issue of the admissibility of specific Rules of Professional Conduct until the parties briefed the Court more completely on the issue. The Court ruled that some of the Rules may be admissible to prove the standard of care with respect to Plaintiff's malpractice claims. This Court has previously declined to exclude the Rules as a matter of law because "[m]ost jurisdictions agree […] that ethical rules are admissible evidence of the standard of care applicable to an attorney." Technine, Inc. v. Simonds, No. S1210-2009, 2012 WL 10159250 at 4 (Vt. Sup. Ct. Sept. 24, 2012) (Crawford, J.). In Technine, the Court determined that the Rules were relevant to the plaintiff's malpractice claims against the defendant because the actions that made up the violation of the rule demonstrated the breach of the standard of care that resulted in the harm that the plaintiff alleged. Id; see also Restatement (Third) of the Law Governing Lawyers § 52 ("Proof of a violation of a rule or statute regulating the conduct of lawyers," while not itself giving rise to a cause of action for negligence or breach of fiduciary duty, "may be considered by a trier of fact as an aid in understanding and applying" the standard of care "to the extent that

2

… proof of the content and construction of such a rule or statute is relevant to the claimant's claim.").

Plaintiff seeks to introduce into evidence Rules 1.1, 1.2(a) and (c), 1.5(c), 1.8(i)(2), and 1.15(d)–(e) in the context of Plaintiff's expert testimony.[1] Plaintiff has filed a supplemental motion to argue the relevance of each specific rule.

Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client" and "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." V.R.P.C. 1.1. In particular, "[p]erhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge." Id., comment 2. Plaintiff argues that Rule 1.1 is relevant in two ways. According to Plaintiff, Defendant Nuovo fell below the standard of care "by claiming an unreasonable and excessive fee" and by "failing to provide adequate and competent representation in [Decedent's] underlying personal injury case."

Rule 1.2(c) provides that "[a] lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." V.R.P.C. 1.2(c). Plaintiff argues that Rule 1.2 is relevant because Defendant Nuovo allegedly failed to investigate the cause of Decedent's injuries and bring timely claims against additional potential defendants. According to Plaintiff, Defendant Nuovo did not seek Decedent's informed consent to limit his representation to claims against Morf and Larose.

Rule 1.5 provides that lawyers shall not charge an unreasonable fee, that "[t]he scope of representation and basis or rate of the fee . . . shall be communicated to the client, preferably in writing," and that contingent fee agreements must be in writing signed by the client. V.R.P.C. 1.5(a)–(c). Rule 1.8(i) provides that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client" except for reasonable contingent fees in civil cases. V.R.P.C. 1.8(i) and 1.8(i)(2). Rule 1.15 provides that a lawyer must promply deliver any funds to which a client is entitled and keep the lawyer and client's funds separate until a dispute over the funds is resolved. V.R.P.C. 1.15(d)–(e). Plaintiff argues that these Rules are relevant because Defendants allegedly delivered less money to Decedent than Decedent would have been entitled to if the representation was compensated at an hourly rate rather than a contingent fee.

Defendants argue that the ethics rules are generally inadmissible in malpractice cases, that they are irrelevant to the applicable standard of care, and that they have no bearing in the claims related to the fees because the Court has previously decided that matter. Defendants argue that the Rules should not be admissible because the preamble to the Rules states that the Rules "are not designed to be a basis for civil liability." V.R.P.C. Scope, ¶[20]. However, as this Court noted in its April 20, 2017 decision, the Rules also provide that "[w]hether violation of a rule gives rise to a cause of action or creates a presumption that a legal duty has been breached is a

---

[1] Plaintiff intends to introduce testimony of Russell Barr, Esq., as an expert on the standard of care.

question of substantive law beyond the scope of the rules." Id. The Reporter's Notes to the Scope state that a court "could hold that the rules do set forth standards of civil liability," and that "the rules are presumably admissible as evidence of the standard of care in a malpractice action."

Defendants also argue that the civil standard and ethics standard differ such that introducing the ethics stands is prejudicial. Defendants cite a treatise for the proposition that "[t]he injection of the ethics standard creates a prejudicial, potentially inflammatory, collateral issue of whether the lawyer was 'unethical.'" 2 Legal Malpractice § 20:12 (2017). The Court agrees that testimony to the effect that Defendants violated the Rules of Professional Conduct or otherwise acted contrary to their ethical obligations would be unduly prejudicial. The Court will not permit such testimony. However, the Court will allow testimony about those provisions of the Rules that are relevant to a determination of the duty of care and its breach.

Defendants next argue that it is not necessary to introduce the Rules into evidence because the standard of care is already well defined. "[T]he appropriate standard of care to which a lawyer is held in the performance of professional services is 'that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'" Russo v. Griffin, 147 Vt. 20, 24 (1986) (quoting Cook, Flanagan & Berst v. Clausing, 438 P.2d 865, 867 (Wash. 1968)). However, this general statement about the standard of care for lawyers does not preclude introduction of Rule 1.1 and 1.2 in this case, because both of those rules could help the jury understand how Defendant Nuovo allegedly fell below the standard of care by failing to identify potential claims (competence) and by failing to seek his client's input and consent in limiting the scope of representation to claims against Morf and Larose. Rules 1.1 and 1.2 illuminate the manner in which Defendant Nuovo allegedly failed to exercise the degree of care, skill, diligence, and knowledge required by the more general standard of care.

Defendants argue that these rules are also irrelevant to the claim that Defendants failed to bring product liability claims against additional defendants in the case-within-the-case, because the only questions to be tried are whether Defendants agreed to assert the product liability claims and whether Decedent would have prevailed in those claims. However, Rules 1.1 and 1.2 are probative of whether, when Defendants agreed to represent Decedent in claims related to the accident, the standard of care included identifying the product liability claims and pursuing them unless Decedent gave his informed consent not to do so.

Defendants further contend that the Court's June 23, 2016 ruling renders Rules 1.5, 1.8, and 1.15 inadmissible. The Court agrees that in that ruling, Judge Toor held that oral contingency fees are enforceable, notwithstanding the Rules' requirement that contingency fees must be reduced to writing. Therefore it is a question of fact whether Defendants were entitled to the contingent fee. That is the law of the case, and accordingly, Rules 1.5, 1.8, and 1.15 are not relevant to Plaintiff's claims that Defendants charged an unreasonable and excessive fee, or unreasonably withheld funds and paid themselves out of funds due to Decedent, because the parties allegedly agreed to an hourly rate rather than a contingent fee. Those claims sound under contract, and after the Court's previous ruling, the Rules are not relevant to the questions concerning the parties' fee agreement and the deduction of a fee for an accident

4

reconstructionist. Therefore the Court will exclude introduction into evidence of Rules 1.5, 1.8, and 1.15.

As noted previously, however, Rules 1.1 and 1.2 are relevant to Plaintiff's professional negligence claims related to Defendants alleged failure to bring product liability claims. Plaintiff's expert may discuss Rules 1.1 and 1.2 with respect to those claims because they have probative value in helping the jury understand the applicable standard of care. However, he may not testify that Defendants fell below the standard of care by claiming an unreasonable and excessive fee. Nor may he testify that Defendants violated the Rules of Professional Conduct, because the probative value of such a conclusion is substantially outweighed by the risk of unfair prejudice and confusion. V.R.E. 403.

<u>Order</u>

Plaintiff's motion to allow at trial reference to Rules 1.1 and 1.2 is *granted*. Plaintiff's motion to allow at trial reference to Rules 1.5, 1.8, and 1.15 is *denied*.

This is a provisional ruling, and the court may modify it during trial depending on the evidence presented.

Dated this ___ day of September, 2017.

_____
Robert A. Mello
Superior Court Judge

5